## THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| LWR TIME, LTD. | : |
| | : |
| **Plaintiff** | : |
| v. | :   **3:10-cv-1923** |
| | :   **(JUDGE MARIANI)** |
| FORTIS WATCHES, LTD. | : |
| | : |
| **Defendant** | : |

### MEMORANDUM OPINION

This matter is before the Court upon Defendant Fortis Watches, LTD's ("Defendant"),

motion to dismiss Plaintiff LWR Time, LTD.'s ("Plaintiff") Complaint (Doc. 1). Defendant's

motion sets forth three reasons in favor of its request for dismissal: (1) the existence of a

mandatory arbitration provision in an underlying contract; (2) improper venue; and (3) forum

non-conveniens. For the reasons set forth below, Defendant's motion will be denied.

### BACKGROUND

On April 1, 2004, Plaintiff entered into a written five-year contract with Defendant to

become an exclusive distributor of Defendant's watches in the United States, Mexico, the

Caribbean, and Duty Free locations ("Written Contract"). (*See* Pl.'s Compl. at ¶ 9, ECF Dkt.

1.) In or around September of 2006, Defendant "terminated the aforementioned written

agreement, but elected to continue the business relationship with [Plaintiff] by orally

engaging [Plaintiff] in Wilkes-Barre, Pennsylvania to serve as [Defendant's] exclusive

distributor." (*See* Pl.'s Compl. at ¶ 10.) Plaintiff's Complaint avers that the parties

continued to operate under an oral agreement ("Oral Agreement") that, "among other things, provided that [Plaintiff] would act on [Defendant's] behalf in the sale of its watches and related goods, and in representing its interests with its retailer customers and the consumer and purchaser." (See Pl.'s Compl. at ¶ 11.) "In addition, [Plaintiff] committed to the terms of a restrictive covenant which precluded [Plaintiff] from distributing or serving as an agent for, any watch manufacturer of watches within the same or similar price range of the [Defendant's] watches and products." (See Pl.'s Compl. at ¶ 11.) Plaintiff further avers that "[p]ursuant to this oral agreement, [Defendant] would regularly communicate with [Plaintiff] in Wilkes-Barre, Pennsylvania through electronic mail, phone calls, and written correspondence for the purpose of advancing their business relationship." (See Pl.'s Compl. at ¶ 12.) Plaintiff's Complaint further avers that "[i]n accordance with the terms of the oral agreement, [Defendant] expressly represented and promised to perform certain obligations with respect to the business relationship, including but not limited to: (1) supplying watches to [Plaintiff] in Wilkes-Barre, Pennsylvania for distribution to retail sellers; (2) assisting [Plaintiff] with the marketing and advertising of its watches through financial subsidies that were sent to [Plaintiff] in Wilkes-Barre, Pennsylvania and the discounting of pricing on the watches; and (3) reimbursing [Plaintiff] for performing or causing to be performed the necessary repairs to defective watches manufactured by [Defendant] and sold by [Plaintiff] as required under the applicable warranty by sending monetary payments to [Plaintiff] in Wilkes-Barre, Pennsylvania." (See Pl.'s Compl. at ¶ 13.)

Plaintiff further alleges that between September of 2006 and October of 2009, Defendant's "conduct confirmed the terms" of this alleged oral agreement. (*See* Pl.'s Compl. at ¶ 14.) Plaintiff asserts that without notice, and in contrast to their prior conduct, Defendant "breached its contractual obligations to [Plaintiff] by failing to supply the requisite watches to [Plaintiff] to fill customer orders during the crucial Holiday season in 2009, thereby causing [Plaintiff] to suffer severe damage in the form of lost profits and loss of goodwill with customers." (*See* Pl.'s Compl. at ¶ 15.) Plaintiff further asserts that "beginning in September of 2009 and until the oral agreement was terminated by [Plaintiff] on February 1, 2010, [Defendant] breached its contractual obligations by failing to provide [Plaintiff] with the promised advertising and marketing assistance through financial subsidies and price discounts, thereby severely restricting [Plaintiff's] ability to sell and distribute [Defendant's] watches to retailers in its distribution territory. . . ." (*See* Pl.'s Compl. at ¶ 16.) Plaintiff avers that it incurred substantial advertising and marketing costs as a result of its reliance on Defendant's "promise to assist with the advertising of the watches." (*See* Pl.'s Compl. at ¶ 17.)

## STANDARD

Defendant has moved to dismiss Plaintiff's Complaint on the basis that its claims are subject to arbitration under the arbitration provisions of the Written Contract, which Plaintiff has alleged was terminated by Defendant in 2006. Defendant does not dispute its termination of the Written Contract, although it argues that the parties' relationship

continued thereafter in accordance with its terms. Motions to compel arbitration or to dismiss proceedings under the Federal Arbitration Act ("FAA") require district courts to apply the standard of review employed in evaluating motions for summary judgment pursuant to Fed. R. Civ. P. 56(c). *See Schwartz v. Comcast Corp.*, 256 F. App'x 515, 518 (3d Cir. 2007)(citing *Par-Knit Mills, Inc. v. Stockbridge Farms Co., Ltd.*, 636 F.2d 51, 54 (3d Cir. 1980)). "Only when there is no genuine issue of fact concerning the formation of the agreement should the court decide as a matter of law that the parties did or did not enter into such an agreement." *Id.* The opposing party receives "the benefit of all reasonable doubts and inferences that may arise." *Id.* If there is a genuine issue of fact, the FAA directs the District Court to hold a trial to determine whether an arbitration agreement exists." *Id.* (citing 9 U.S.C. § 4).

This matter is presented to the district court, in part, as a motion to dismiss for improper venue pursuant to Fed. R. Civ. P. 12(b)(3). Motions to dismiss for "improper venue generally require the court to accept as true the allegations of the pleadings." *Heft v. AAI Corp.*, 355 F. Supp. 2d 757, 762 (M.D. Pa. 2005) (citing *Pinker v. Roche Holdings Ltd.*, 292 F.3d 361, 368 (3d Cir. 2002); *Myers v. Am. Dental Ass'n*, 695 F.2d 716, 724 (3d Cir. 1982)). "The parties may submit affidavits in support of their positions, and may stipulate as to certain facts, but the plaintiff is entitled to rely on the allegations of the complaint absent evidentiary challenge." *Heft*, 335 F. Supp. 2d at 762 (citing *Carteret Sav. Bank, F.A. v. Shushan*, 954 F.2d 141, 142 & n.1 (3d Cir. 1992); *Myers*, 695 F.2d at 724. "Whatever the

nature of the parties' submissions, the court is bound to view the facts in the light most favorable to the plaintiff." *Id.* (citing *Carteret*, 954 F.2d at 142 & n.1; *Myers*, 695 F.2d at 724).

## DISCUSSION

Defendant's Motion sets forth three separate grounds upon which it believes dismissal is appropriate: (1) a mandatory arbitration provision; (2) improper venue; and (3) forum non-conveniens.

### A. Mandatory Arbitration Provision

"In determining whether a matter is arbitrable, courts are bound by the principle that arbitration is a creature of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed to submit." *The Basketball Marketing Co., Inc. v. Urbanworks Entertainment*, No. 04-3179, 2004 WL 2590506, at * 4 (E.D. Pa. Nov. 10, 2004)(citing *United Steelworkers v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582, 80 S.Ct. 1347, 4 L.Ed.2d 1409 (1960)).[1] A district court must submit a case to arbitration

---

[1] The Court's application of cases raising issues of arbitrability under collective bargaining agreements is proper in this matter in light of the Supreme Court's holding in *Circuit City Stores, Inc. v. Adams*, 532 U.S. 105, 121 S.Ct. 1302 (2001), in which the Court held that the FAA's coverage provision requires the enforcement of arbitration agreements in any contract involving commerce, including collective bargaining agreements. *Id.* at 124 (citing 9 U.S.C. § 2). The Court is further aware of *Circuit City's* holding that "[s]ection 1 exempts from the FAA only contracts of employment of transportation workers." *Id.* at 119. This ruling has been consistently applied within the courts of this circuit as demonstrated in *Spinetti v. Service Corp. Intern.*, 324 F.3d 212, 218 (3d Cir. 2003), in which the Third Circuit noted the Supreme Court's mandate "that with a limited exception, arbitration agreements covering employment-related claims fall within the FAA's provisions." *Id.* at 218 (internal citations omitted); *see also Palcko v. Airborne Express, Inc.*, 372 F.3d 588 (3d Cir 2004)(recognizing FAA exemption of "transportation workers"). "Any arbitration provision in an agreement affecting interstate commerce is subject to the Federal Arbitration Act." *Vantage Technologies Knowledge Assessment, LLC v. College Entrance Examination Bd.*, 591 F. Supp. 2d 768, 770 (E.D. Pa. 2008)(citing *Moses H. Cone Mem. Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983); 9 U.S.C. § 2). The cases discussed by the Court in the matter *sub judice* do not involve claims relating to the exception arising under Section 1 of the FAA, and thus constitute

"when (1) there is a valid agreement to arbitrate and (2) the specific dispute falls within the ·

substantive scope of the agreement." *Id.* (citing *Medtronic Ave., Inc. v. Advanced*

*Cardiovascular Sys., Inc.*, 247 F.3d 44, 54 (3d Cir. 2001)). To determine whether an action

is arbitrable, "the parties' intentions control." *See Mitsubishi Motors Corp. v. Soler Chrysler-*

*Plymouth, Inc.*, 473 U.S. 614, 626, 105 S.Ct. 3346, 87 L.Ed.2d 444 (1985). "Furthermore,

although doubts about the scope of an arbitration agreement must be resolved in favor of

arbitration, the validity of an arbitration agreement and the issues that must be arbitrated are

matters to be determined by the Court." *See Urbanworks Entertainment*, 2004 WL

2590506, at * 4 (citing *Medtronic Ave., Inc.*, 274 F.3d at 55). Courts, not arbitrators, decide

the substantive arbitrability question. *See AT&T Technologies, Inc. v. Comm's Workers*,

475 U.S. 643, 651, 106 S.Ct. 1415, 89 L.Ed.2d 648 (1986).

Arbitration clauses do not generally survive the termination of a contract. *See*

*Durham Life Ins. Co. v. Evans*, 166 F.3d 139, 159 n. 15 (3d Cir. 1999). Nevertheless, in

certain limited circumstances, an arbitration provision may survive the expiration or

termination of an agreement. *See Litton Fin. Printing Div. v. NLRB*, 501 U.S. 190, 208, 111

S.Ct. 2215, 115 L.Ed.2d 177 (1991). In *Litton*, the Supreme Court examined whether

grievances that arose following the expiration of a collective bargaining agreement were

appropriate analytical tools by which to evaluate the parties' claims. Because the Supreme Court has ruled that federal courts have jurisdiction to enforce the arbitration provisions of collective bargaining agreements under the FAA, with the single exception of contracts of employment for transportation workers, *Circuit City Stores, Inc., supra,* the case law developed with respect to the enforceability of arbitration clauses in collective bargaining agreements has application to cases involving the arbitrability of disputes under non-labor contracts containing an arbitration clause. This is not to suggest, however, that there can be no differences between a collective bargaining agreement and a commercial contract that would be relevant to a determination of the arbitrability of a dispute. *See* discussion of *Luden's, Inc. v. Local Union No. 6 of the Bakery, Confectionery and Tobacco Workers Int'l Union,* 28 F.3d 347 (3d Cir. 1994), *infra.*

subject to an arbitration clause contained within the expired agreement. *See id.* at 205. In clarifying its earlier decision in *Nolde Bros., Inc. v. Bakery & Confectionary Workers Union*, 430 U.S. 243, 97 S.Ct. 1067, 51 L.Ed.2d 300 (1977), the Supreme Court in *Litton* held that only a post-termination grievance that "arises-under [a] contract" is subject to arbitration. *See Litton Fin. Printing Div.*, 501 U.S. at 205. "A post-termination dispute arises under the contract (i) when it involves facts and occurrences that arose before expiration; (ii) where an action taken after expiration infringes a right that occurred or vested under the agreement; or (iii) where, under normal principles of contract interpretation, the disputed contractual right survives expiration of the remainder of the agreement." *Urbanworks Entertainment*, 2004 WL 2590506, at *4 (citing *Litton Fin. Printing Div.*, 501 U.S. at 205-206). Thus, a finding of arbitrability requires "a nexus between the post-termination conduct and the content of the collective bargaining agreement in which the arbitration clause is embedded." *Id.* As several courts have noted, "[t]he rationale behind this standard resolves competing equities." *Id.* On the one hand it acknowledges that parties do not "intend a pivotal dispute resolution provision to termination for all purposes upon the expiration of the agreement." *Litton*, 501 U.S. at 208. Conversely, it recognizes that an "expired contract has by its own terms released all its parties from their respective, contractual obligations, except obligations already fixed under the contract but as yet unsatisfied." *Id.* at 206. At base, "the object of an arbitration clause is to implement a contract, not to transcend it." *Id.* at 205.

Defendant argues that the mandatory arbitration clause set forth in the Written

Contract remained in full effect despite the termination of the Written Contract prior to its

natural expiration.[2]  Defendant maintains that the arbitration clause requires that the entire

matter be sent to binding arbitration, and that as a matter of law, the instant proceeding

must be dismissed.  Defendant's argument is predicated upon the concept that the

expiration or termination of an agreement containing an arbitration provision remains

binding with regard to the arbitration provision where the parties to the contract continue to

perform as if the initial written agreement remained in full effect.  (See Def.'s Br. in Supp.

Mot. to Dismiss at 10, ECF Dkt. 17.)

In *Luden's Inc. v. Local Union No. 6 of the Bakery, Confectionary & Tobacco

Workers Int'l Union*, 28 F.3d 347 (3d Cir. 1994), the Third Circuit held that an employer's

duty to arbitrate was not discharged after the "lapse" of a collective bargaining agreement

containing an arbitration clause.  The terms of the collective bargaining agreement between

Luden's and the Union provided that the agreement was to expire on or after a certain date,

and that such date was to be triggered by either sixty days' notice of either party or the joint

execution of a new, superseding agreement.  *See id.* at 350.  The Union provided Luden's

with the proper sixty days' notice and set a "natural" expiration date.  *See id.*  The parties

---

[2] The arbitration clause in the Written Contract provided:

    10.    Arbitration:

All disputes arising in connection with the terms of the exclusive distribution shall be finally
settled under the Rules of Conciliation and Arbitration of the International Chamber of Commerce
by one or more arbitrators appointed in accordance with the said Rules, which arbitration shall be
conducted in Grenchen, Switzerland. (Doc. 14-2)

then commenced negotiations to draft a new agreement. *See id.* Luden's and the Union generally reached an agreement as to the terms of the new CBA when the negotiations broke down. *See id.* The Union then turned to the expired arbitration provision contained in the expired agreement to settle a dispute over the retroactivity of wage increases between the time of the expiration of the old collective bargaining agreement and the ratification of a successor agreement. Luden's then initiated a declaratory judgment action and alleged that the dispute was not arbitrable. *Id.* The district court enjoined the arbitration proceedings, and on appeal, the Third Circuit held:

> [T]hat in a continuing employment relationship an arbitration clause may survive the expiration or termination of a CBA intact as a term of a new, implied-in-fact CBA unless (i) both parties in fact intend the term not to survive, or (ii) under the totality of the circumstances either party to the lapsed CBA objectively manifests to the other a particularized intent, be it expressed verbally or non-verbally, to disavow or repudiate the term. . . .

*Id.* at 364. The Court further held that "[i]n the circumstances of this case, where neither party in any palpable way challenged the continued vitality of the arbitration provision in particular . . . before the dispute erupted, and where no evidence shows that both the parties in fact intended their obligation to arbitrate grievances to be discharged, we think that the parties' duty to arbitrate grievances according to the terms of [the expired CBA] was never totally discharged." *Id.*

Luden's affords the Defendant insufficient support for its assertion that the Plaintiff's claims in this case are subject to arbitration. This conclusion follows from the rationale set forth at length in Luden's which was then encapsulated in its holding at 28 F.3d 364:

9

For the foregoing reasons, we hold that in a continuing employment relationship an arbitration clause may survive the expiration or termination of a CBA intact as a term of a new, implied-in-fact CBA unless (i) both parties in fact intend the term not to survive, or (ii) under the totality of the circumstances either party to the lapsed CBA objectively manifests to the other a particularized intent, be it expressed verbally or non-verbally, to disavow or repudiate that term. This result injects substantially more stability and certainty into labor law, and promotes the primary statutory objectives of peaceful and stable relations underpinning the NLRA, at the slight cost of a notice requirement forcing a party to make clear its wish no longer to abide by the arbitration clause.

In the circumstances of this case, where neither party in any palpable way challenged the continuing vitality of the arbitration provision in particular (as opposed to the CBA as a whole) before the dispute erupted, and where no evidence shows that both the parties in fact intended their obligation to arbitrate grievances to be discharged, we think that the parties' duty to arbitrate grievances according to the terms of their 1988 CBA was never totally discharged. In other words, Luden's general, undifferentiated termination of the 1988 CBA effective July 2, 1992 merely transmuted the parties' duty to arbitrate into a term of an implied-in-fact CBA which the parties formed on that date.

Thus, the Court's decision in *Luden's* turns, initially, on the "continuing employment relationship" between an employer and the labor union representing its employees as that relationship is defined by the National Labor Relations Act, as amended, 29 U.S.C. § 151, *et seq.* The Court's decision is grounded as well on the policy, enshrined in the NLRA at 29 U.S.C. § 173(d), that federal labor policy favors the resolution of employee grievances by "a method agreed upon the parties." Further, the United States Supreme Court has established a strong presumption favoring arbitrability of disputes between parties to collective bargaining agreements which contain arbitration provisions. The policy favoring the arbitration of labor disputes arising under collective bargaining agreements is set forth in

the now famous *Steelworkers Trilogy, United Steelworkers v. Warrior & Gulf Navigation Company,* 363 U.S. 574, 80 S.Ct. 1347, 4 L.Ed.2d 1409; *United Steelworkers v. Enterprise Wheel & Car Corp.,* 363 U.S. 593, 596, 80 S.Ct. 1358, 4 L.Ed.2d 1424 (1960), and *United Steelworkers v. American Mfg. Company,* 363 U.S. 564, 80 S.Ct. 1343, 4 L.Ed.2d 1403 (1960). The principles of the Steelworkers Trilogy were reaffirmed in *AT&T Technologies, Inc., supra.*

Thus, the important labor relations policies which support the Court's decision in *Luden's, Inc., supra,* have no application here. See *Bogen Communications, Inc. v. Tri-Signal Integration, Inc.,* No. 04-6275, 2006 WL 469963 (D.N.J. February 27, 2006), *aff'd* 227 F. App'x 159 (3d Cir. 2007). There, Bogen, a manufacturer and seller of sound systems and telephone peripherals, authorized Tri-signal Integration, Inc. (Tri-Signal) to distribute sound systems in California. The two companies entered into a written contract that included an arbitration provision. After the contract expired, the companies continued to do business although they conducted their relationship on what the Court described as "materially different terms." *Bogen,* 227 F. App'x at 160.

More than two years after the contract expired, Bogen sent Tri-Signal a series of termination letters. Tri-Signal then sued Bogen, alleging claims arising from the termination letters that included a claim of breach of an implied-in-fact contract but not breach of the original contract. Bogen sought to compel arbitration. The District Court found that none of

11

Tri-Signal's claims was based on Bogen's actions during the term of the original contract

and denied Bogen's petition.

On Bogen's appeal, the Circuit Court affirmed, stating:

> The District Court did not err in refusing to order arbitration because Bogen chose not to renew the contract that contained the arbitration clause. The dispute over termination did not arise until more than two years after the original contract expired and does not relate back to that contract.

227 F. App'x at 161.

Bogen had relied on *Luden's, Inc., supra,* and argued that because it and Tri-Signal

continued to do business together after the Written Contract expired, their conduct gave rise

to an implied-in-fact agreement for arbitration. The Court rejected this argument, stating:

> *Luden's,* however, was decided by us in the context of a labor dispute, where the parties had engaged in extensive negotiations concerning the extension of a collective bargaining agreement. *Id.* at 350-51. The employer and union in *Luden's* intended to renew their agreement and intended for it to contain an arbitration clause. *Id.* at 356. Indeed, the litigation concerned retroactive wages for the period between the expiration of the old agreement and the ratification of the new one, both of which contained an arbitration clause. *Id.* at 349, 356. Here, by contrast, the companies neither signed a new contract nor evidence any continuing intention to arbitrate disputes."

*Id. See also Vantage Tech. Knowledge Assessment, LLC v. College Entrance*

*Examination Board,* 591 F. Supp. 2d 768, 770-771 (E.D. Pa. 2008)(In *Luden's,* "the

backdrop of labor relations was critical to the decision. Arbitration clauses in such

cases are typically included for the express benefit of labor in exchange for a

promise not to strike. No similar exchange exists where two sophisticated

12

commercial entities mutually decide to continue their relationship on a day-to-day basis in the absence of an agreement signed by both.")(internal citations excluded).

In *Nissan N. America, Inc. v. Jim M'Lady Oldsmobile, Inc.*, 486 F.3d 989 (7th Cir. 2007), the court addressed a factual scenario substantially similar to that found in the case *sub judice*. Nissan and M'Lady entered into a written automobile distribution agreement, which was subsequently extended by several amendments. After the parties were unable to agree upon certain terms, the agreement expired, yet Nissan argued that the "parties continued to operate under an identical agreement as evidenced by the parties' course of dealing." *Id.* at 994. The court, however, found that Nissan failed to "demonstrate that the parties had a written agreement to arbitrate. . . ." *Id.* "Because the agreement was not in writing," the Court "declined to accept it as the writing required by 9 U.S.C. § 4." *Id.* The Court further found that although Nissan continued to supply M'Lady with cars pursuant to an unwritten agreement, "there is no evidence that part of that agreement was a promise to arbitrate any disputes." *Id.* at 995.

In the present matter, Plaintiff's Complaint does not allege any claims that predate the expiration of the Written Contract. (*See* Pl.'s Compl. at ¶¶ 14-17.) Even with regard to the alleged non-payment for warranty work, Plaintiff avers that "beginning in September of 2006, Fortis breached its contractual obligations by failing to reimburse LWR for the expenses it incurred in performing the requisite warranty repairs to watches manufactured by Fortis and sold by LWR under the terms of the applicable warranty." (*See* Pl.'s Compl. at

¶ 17.) Thus, the specific language of the Complaint demonstrates that Plaintiff's alleged

injuries arise from breaches beginning in 2006 after the termination of the Written Contract.

In addition, the Written Contract was admittedly terminated by Defendant Fortis. Nothing in

the record indicates that the parties agreed to continue the arbitration provision, and

pursuant to 9 U.S.C. § 4, such a provision requiring arbitration must be in writing;

accordingly, the arbitration provision expired on the termination of the Written Contract.

Defendant, having terminated the Written Contract which contained the provision requiring

arbitration, may not invoke the arbitration provisions of that agreement to compel arbitration

of Plaintiff's claims that Plaintiff alleges arise from conduct that occurred following the

termination of the Written Contract, and which are not founded on rights that occurred or

vested under the terminated Written Contract.

B. Venue

Defendants further argue that venue is improper in the Middle District of

Pennsylvania because the parties contracted to a mandatory forum selection clause, which

provides for exclusive jurisdiction in Switzerland. In addition, Defendants posit that

jurisdiction is improper in the Middle District of Pennsylvania because it did not, among

other things, conduct business, own property, have a phone listing, or possess bank

accounts in Pennsylvania.

### 1. Forum Selection Clause

The question of whether Defendant ever provided the forum selection clause that Defendant asserts was included with its invoices to Plaintiff is a matter of dispute. Defendant's Motion to Dismiss is accompanied by the Declaration of Mark Branschi (ECF Dkt. 14-2), in which Branschi asserts that Defendant provided invoices to Plaintiff containing a forum selection clause. The invoices, Branschi maintains, "noted that each order was subject to the terms and conditions of sale." (*See* Branschi Decl. at ¶ 15, ECF Dkt. 14-2.) Branschi further maintains that the terms and conditions of sale state: "14. The place of jurisdiction for both the seller and the buyer shall be at the registered office of the seller. The seller shall however be entitled to sue the buyer at the latter's registered address." (*See* Branschi Decl. at ¶ 16.) Both an invoice to Plaintiff, and a separate page containing "terms and condition of sale" are attached as exhibits. (*See* Invoice to Plaintiff, ECF Dkt. 14-2, Exh. B; Terms of Conditions of Sale, ECF Dkt. 14-2, Exh. C.)

Because the Defendant must carry its burden of showing that venue is improper to succeed in its motion, s*ee Bockman v. First Am. Marketing Corp.*, 459 F. App'x 157, 160 (3d Cir. 2012)(citing *Myers v. Am. Dental Ass'n*, 695 F.2d 716, 724-25 (3d Cir. 1982)), Defendant must provide evidence to justify the relief it seeks. Defendant fails to meet this burden. Although the exhibits demonstrate that an invoice to Plaintiff was printed, there is no evidence that the separate terms and conditions sheet was attached to that invoice, or even that the terms and conditions were provided to Plaintiff at any time. Plaintiff asserts

that it never received the terms and conditions sheet, and Defendant does not provide an

adequate evidentiary basis to refute that contention.  Accordingly, the alleged forum

selection clause does not compel the Court to dismiss for improper venue.

2. Venue Generally

Under 28 U.S.C. § 1391, in matters where jurisdiction is based on diversity of

citizenship, a plaintiff may bring a case in:

> (1) a judicial district where any defendant resides, if all defendants reside in
> the same State, (2) a judicial district in which a substantial part of the events
> or omissions giving rise to the claim occurred, or a substantial part of property
> that is the subject of the action is situated, or (3) a judicial district in which any
> defendant is subject to personal jurisdiction at the time the action is
> commenced, if there is no district in which the action may otherwise be
> brought.

28 U.S.C. § 1391(a)(1)-(3).  The "defendant[s] . . . bear the burden of showing improper

venue."  *Myers*, 695 F.2d at 724-25.

In the present matter, Defendant does not reside in any judicial district within the

territorial jurisdiction of the United States.  Defendant does not maintain an office, bank

account, sales force, or any property within the United States.  Thus, venue can only be

proper under § 1391(2) or § 1391(3).  Accordingly, the Court must determine whether a

"substantial part of the events or omissions giving rise to" this suit occurred in the Middle

District of Pennsylvania.  *See* 28 U.S.C. §1391(2).  If venue is still improper, the Court must

then determine if Defendant is subject to personal jurisdiction in the Middle District of

Pennsylvania, in order to decide the applicability of § 1391(3).

Plaintiffs contend that a substantial part of the events or omissions giving rise to the present action arose in the Middle District of Pennsylvania. Defendant's alleged failure to provide watches to Plaintiff resulted from its non-shipment of such merchandise from Switzerland. Further, the alleged non-payments for warranty repair work and advertising fees occurred in Switzerland as well. The cases are clear on this point: the omission to remit payment is an "event or omission" that provides for proper venue in the district in which the payor is located. *See Cottman Transmission Sys. Co. v. Martino*, 36 F.3d 291, 295 (3d Cir. 1994)(venue proper in place of omission); *Shamrock Materials v. Alliance Cos.*, No. 05-5736, 2006 WL 1892722, at *3 (E.D. Pa. July 10, 2006)(same). In this case, Defendant is the payor and the "events or omissions" occurred in Switzerland. Accordingly, a suit against a defendant whose entire operations are based in Switzerland and who fails to remit payments for services rendered by Plaintiff, in addition to the failure to ship watches in accordance with a purported oral agreement from outside the United States, is not properly situated in the Middle District of Pennsylvania under § 1391(2).

In the instant matter, however, venue in the Middle District of Pennsylvania is appropriate under § 1391(3). Pursuant to this section, venue is proper in "a judicial district in which any defendant is subject to personal jurisdiction at the time the action is commenced, if there is no district in which the action may otherwise be brought." 28 U.S.C. § 1391(3).

A determination of proper venue in this case turns on the court's personal jurisdiction over Defendant. Federal Rule of Civil Procedure 4(e) "authorizes personal jurisdiction over non-resident defendants to the extent permissible under the law of the state in which the court sits." *Library Publications v. Heartland Samplers, Inc.*, 825 F. Supp. 701, 703 (1993); *Pennzoil Prods. Co. v. Colelli Assocs.*, 149 F.3d 197, 200 (3d Cir. 1998). "The Pennsylvania long-arm statute provides for the exercise of personal jurisdiction over a non-resident corporate defendants where: (1) the corporation maintains 'a continuous and systematic part of its general business' in Pennsylvania (42 Pa. C.S.A. § 5301(a)(2)(iii)); or (2) the cause of action arises from the defendant's contacts with Pennsylvania and the defendant has the 'most minimum contact' with Pennsylvania necessary under the due process clause of the Constitution (42 Pa. C.S.A. § 5322(b), (c))." *Id.*; *see also O'Connor v. Sandy Lane Hotel*, 496 F.3d 312, 316 (3d Cir. 2007)(jurisdiction may be established under the Pennsylvania long-arm statute even with the "most minimum contact" with the Commonwealth that comports with due process). Given that the Pennsylvania long-arm statute is co-extensive with Constitutional due process requirements, this court must determine whether personal "jurisdiction would conform with the Due Process Clause." *See Poole v. Sasson*, 122 F. Supp. 2d 556, 558 (E.D. Pa. 2000).

"Under the due process clause, a court may not exercise personal jurisdiction over a non-resident defendant unless there are certain minimum contacts between the defendant and the forum state." *Time Share Vacation Club v. Atlantic Resorts, Ltd.*, 735 F.2d 61, 63

(3d Cir. 1984)(citing *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 292, 100

S.Ct. 559, 62 L.Ed.2d 490 (1980)). The minimum contacts with the forum state must be

"such that the maintenance of the suit does not offend traditional notions of fair play and

substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed.

95 (1945)(quotation marks and internal citations omitted). A defendant has minimum

contacts when he purposefully directs his activities toward the residents of that state, which

provides "fair warning" that he may be brought into court in that jurisdiction. *See Burger*

*King Corp. v. Rudzewicz*, 471 U.S. 462, 472 105 S.Ct. 2174 (1985)("[m]ail and telephone

communications sent by the defendant into the forum may count toward the minimum

contacts that support jurisdiction"). In making a determination of whether to exercise

personal jurisdiction, the court may only consider actions taken by the defendant

individually. *See Helicopteros Nacionales de Columbia, S.A. v. Hall*, 466 U.S. 408, 417,

104 S.Ct. 1868, 80 L.Ed.2d 404 (1984)("Unilateral activity of another party or a third person

is not an appropriate consideration when determining whether a defendant has sufficient

contacts with a forum state to justify an assertion of jurisdiction.").

Due process principles are reflected in the two recognized forms of personal

jurisdiction—general and specific. *See Marten v. Godwin*, 499 F.3d 290, 296 (3d Cir. 2007).

General and specific jurisdiction are "analytically distinct categories, not two points on a

sliding scale." *O'Connor*, 496 F.3d at 321. To determine the proper application of personal

jurisdiction, the court must engage in "specific analytical steps." *Pennzoil Prods.*, 149 F.3d

at 200. As the Third Circuit held in *Provident Nat'l Bank v. California Fed. Sav. & Loan Ass'n*, 819 F.2d 434 (3d Cir. 1987), "the plaintiff must show significantly more than mere minimum contacts to establish general jurisdiction." *Id.* at 437. The standard to establish general jurisdiction is roughly approximate to finding a physical presence within the state, although such "entrance" is not necessary. *See William Rosenstein & Sons Co. v. BBI Produce, Inc.*, 123 F. Supp. 2d 268, 274 (M.D. Pa. 2000).

In the present matter, Defendant does not maintain an office, bank account, telephone number, post-office box, employee, or any property within Pennsylvania. However, Defendant's contacts in the present case include the shipping of watches to Wilkes-Barre, payment for warranty work, and reimbursement for product advertising, as well as extensive communications with Plaintiff. *See Moore v. Little Giant Indus., Inc.*, 513 F. Supp. 1043 (D. Del. 1981)(Delaware long-arm statute concerning the shipping of products or services into the state by nonresident conferred personal jurisdiction over foreign corporation). Defendant shipped its product to Wilkes-Barre over the course of many years, and Plaintiff advertised and promoted Defendant's watches to its various customers. It is not unfair, or unreasonable, for Defendant to expect to be subject to the personal jurisdiction of courts sitting in Pennsylvania in the event that a dispute arises concerning its transactions within the Commonwealth. Defendant's contacts with Plaintiff were numerous and constant. This present suit does not arise out of an isolated incident, but is the result of a dispute stemming from an on-going relationship requiring efforts by the

Plaintiff on Defendant's behalf which were carried out in Wilkes-Barre, Pennsylvania.

Accordingly, personal jurisdiction and venue are proper within the Middle District of

Pennsylvania under 28 U.S.C. § 1391(3).

## C. Forum Non-Conveniens

In the exercise of its discretion, a district court may dismiss a case "when an

alternative forum has jurisdiction to hear the case, and when trial in the chosen forum would

'establish . . . oppressiveness and vexation to a defendant . . . out of all proportion to

plaintiff's convenience,' or when the 'chosen forum [is] inappropriate because of

considerations affecting the court's own administrative and legal problems.'" *See Piper*

*Aircraft Co. v. Reyno*, 454 U.S. 235, 241, 102 S.Ct. 252, 70 L.Ed.2d 419 (1981)(quoting

*Koster v. American Lumbermans Mut. Cas. Co.*, 330 U.S. 518, 524, 67 S.Ct. 828, 91

L.Ed.2d 1967 (1947)).  In deciding a forum non conveniens motion, the court's "ultimate

inquiry is where trial will best serve the convenience of the parties and the ends of justice."

*Koster*, 330 U.S. at 527.

"A district court entertaining a forum non conveniens motion must first decide

whether an adequate alternative forum exists to hear the case."  *Lacey v. Cessna Aircraft*

*Co.*, 862 F.2d 38, 43 (3d Cir. 1988).  "If there is an adequate alternative forum, the district

court must consider and balance several private and public interest factors that are relevant

to the forum non conveniens determination."  *Id.*  There is no inflexible test, and "[e]ach

case turns on its facts."  *Id.* (citing *Piper*, 454 U.S. at 249).  "However, the plaintiff's choice

of forum should rarely be disturbed, unless the balance of factors is strongly in favor of the defendant." *Id.*

In the present matter, there is no alternative jurisdiction in which Plaintiff can file suit against Defendant except the courts of Switzerland. As venue and personal jurisdiction are properly laid in the Middle District of Pennsylvania, requiring Plaintiff to prosecute this action in Europe would be unduly oppressive, overly burdensome, and harsh. The Court is sensitive to the argument that a foreign defendant's need to defend an action in the United States may be similarly burdensome, but the Court is unwilling to arbitrarily shift that burden to Plaintiff, who is entitled to some deference in its choice of a forum. *See Lacey*, 862 F.2d at 46 (district court "should have accorded at least some weight to the plaintiff's choice"). In *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 67 S.Ct. 839, 91 L.Ed. 1055 (1947), the Supreme Court considered certain private factors in their forum non conveniens analyses:

> [T]he relative ease of access to sources of proof; availability of compulsory process for attendance of unwilling, and the cost of obtaining attendance of willing, witnesses; possibility of view of premises, if view would be appropriate to the action; and all other practical problems that make trial of a case easy, expeditious and inexpensive.

*Gilbert*, 330 U.S. at 508.

Here, access to sources of proof, availability of compulsory process for the attendance of unwilling witnesses, and practical matters to facilitate the ease of trial do not warrant granting Defendant's forum non conveniens motion. Nothing in the record indicates that the parties will truly be better suited to prosecute or defend this action in any other

jurisdiction. The inconvenience at issue involves the location of the actual parties, and this is not a matter that can be settled without choosing between Plaintiff's and Defendant's preferences. Given that Plaintiff is granted some deference in its choice of a forum, no private factor weighs heavily enough for the Court to grant Defendant's request.

Furthermore, certain public interests must be considered, and include:

> [T]he enforceability of the judgment, practical considerations that could make the trial easy, expeditious, or inexpensive; the relative administrative difficulty in the two fora resulting from court congestion; the local interest in deciding local controversies at home; the public policies of the fora; and the familiarity of the trial judge with the applicable state law in diversity cases.

*Jumara v. State Farm Ins. Co.*, 55 F.3d 873, 879-880 (3d Cir. 1995)(internal citations omitted).

Again, the facts presented by the parties do not require the Court to exercise its discretion to grant Defendant's request to litigate this case in another forum. Just as we noted in our consideration of the private factors, the Court will not arbitrarily decide that one party should be inconvenienced over another. Maintaining this action in the Middle District of Pennsylvania would facilitate a prompt resolution of the matter. Furthermore, Defendant does not provide any proof to buttress its claim that a similar action is currently pending in Switzerland and that a second action in this Court could result in some conflicting result or harm. At base, allowing this action to continue in the Middle District of Pennsylvania will serve the convenience of the parties and further the interests of justice. Accordingly, Defendant's forum non conveniens motion will be denied.

## CONCLUSION

For the reasons set forth in this memorandum opinion, Defendant's Motion to Dismiss will be denied.

DATE: July 16,  2012

Robert D. Mariani
United States District Judge